UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:05CV-22-M

ROGER G. WARREN                                                                PLAINTIFF

V.

SNAP-ON, INCORPORATED, et al.                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiff, Roger G. Warren, to remand the present action to the Muhlenberg Circuit Court pursuant to 28 U.S.C. § 1447(c) [DN 14]. The Plaintiff argues that this Court does not have subject matter jurisdiction. In response, Defendants, Snap-On Incorporated, Snap-On Tools Company and Equipment Services, Inc., maintain that Plaintiff's state law claims are preempted by ERISA and therefore, jurisdiction is proper. This matter is now ripe for decision. For the reasons set forth below, Plaintiff's Motion to Remand is **granted**.

**BACKGROUND**

Plaintiff was employed by Defendants, or its predecessor company Brewco, in Central City, Kentucky, from November 1994 through January 13, 2004, as Regional Sales Manager. Plaintiff alleges that pursuant to an Agreement and Plan of Reorganization entered into between Defendants and Brewco, Defendants agreed to provide a severance payment equivalent to six (6) months average monthly salary at such time that the Defendants "moved or relocated the operations of Brewco from Central City, Kentucky." (Complaint ¶ 6). The

severance agreement in question is part of an acquisition agreement entered into between Snap-on and Plaintiff's employer and other related entities in 1997. The Agreement provides in part as follows:

> Snap-on covenants to Shareholder that, with respect to each individual set forth on Schedule 3.1, in the event that Snap-on announces that it will relocate the operations of Company (other than administrative, accounting and other back office functions) to another Snap-on facility that is located a distance from the Company's existing facilities that would be considered an unreasonable daily commute, each such individual who is then employed by Snap-on or Company and does not elect to relocate shall receive a payment in an amount equal to six months compensation, based on such individual's average monthly compensation for the then previous six months.

(Agreement and Plan of Reorganization, 3.1 Employee Matters, Exhibit A Defendant's Response to Motion to Remand). Schedule 3.1 list ten employees including Plaintiff. In October of 2001, the Defendants relocated the operations of Brewco from Central City, Kentucky. (Complaint ¶ 7). Plaintiff continued to work for the Defendants in Central City. (Complaint ¶5). Plaintiff alleges that the Defendants also entered into other agreements with employees of Brewco to pay a severance package or amount to said employees, including Plaintiff, at the time any job position of any such employee was eliminated, and/or his or her position was terminated by the Defendants. (Complaint ¶ 8).[1] On January 13, 2004, Defendants terminated the Plaintiff's job on the grounds that the position was being eliminated from the Defendant companies. (Complaint ¶ 9). Plaintiff alleges that after the elimination of the position, the Defendants tendered to the Plaintiff a proposed letter

---

[1] The parties did not provide to the Court copies of the complete Agreement and Plan of Reorganization or the other agreements referenced in Plaintiff's complaint.

agreement and release which was to provide severance pay benefits of $15,922.40. Plaintiff refused to sign the letter agreement and notified the Defendants that the terms were not acceptable. Plaintiff claims that the Defendants have refused to pay the Plaintiff any severance pay as a result of their elimination of the job position of the Plaintiff and/or the relocation of the company from Central City, Kentucky. (Complaint ¶ 14).

Plaintiff filed this breach of contract action against the Defendants on January 13, 2005 in Muhlenberg Circuit Court alleging that the Defendants failed to make a severance payment to the Plaintiff pursuant to agreements between the Defendants and the Plaintiff and/or Plaintiff's employer, Brewco. On February 3, 2005, Defendants removed this action from the Muhlenberg Circuit Court to the United States District Court, Western District of Kentucky, claiming that the underlying action is based in part upon the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. Defendants maintain that while Plaintiff's complaint did not expressly reference ERISA, the cause of action asserted in the complaint clearly involves an ERISA plan and is subject to, and preempted by, ERISA and properly removable.

Plaintiff has filed this motion to remand the case arguing that this Court lacks subject matter jurisdiction. Plaintiff maintains that the complaint alleges only state law claims and makes no mention of ERISA. Further, the Plaintiff contends that the facts as stated in the Plaintiff's Complaint do not provide a basis for ERISA preemption, and cannot therefore form the basis for subject matter jurisdiction under 28 U.S.C. § 1331.

**DISCUSSION**

Both parties agree that remand depends upon whether the Defendants' severance agreement constitutes an ERISA plan within the meaning of the statute. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). If the Agreement and Plan of Reorganization[2] is an ERISA plan, the action has been properly removed to federal court on the basis of federal question/ERISA preemption. If not, the matter is a state law claim for breach of contract over which this Court does not have subject matter jurisdiction. See Mazur v. Delta Dental Plan of Michigan, Inc., 1995 WL 871209 (E.D. Mich. Dec. 18, 1995).

ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . (A) . . . benefits in the event of . . . unemployment . . . or (B) any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1). Severance plans are included in the definition of 29 U.S.C. § 1002(1)(B). Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 615 (6th Cir. 2002); Shahid v. Ford Motor Co., 76 F.3d 1404, 1409 (6th Cir. 1996). However, the Sixth Circuit had held that not all severance pay plans are ERISA plans. Cassidy, 308 F.3d at 615. The Sixth Circuit examines the nature of the plan to distinguish ERISA from non-ERISA plans. Cassidy, 308 F.3d at 615.

---

[2]The parties did not address Plaintiff's allegations in his complaint regarding additional agreements or severance plans. (Complaint ¶¶ 8, 14). Neither party provided the Court with a copy of these agreements or argued that these agreements constitute ERISA plans under the case law cited below. Thus, the Court will limit its discussion to the severance plan contained in the Agreement and Plan of Reorganization.

"The hallmark of an ERISA benefit plan is that it requires 'an ongoing administrative program to meet the employer's obligation.'" Swinney v. General Motors Corp., 46 F.3d 512, 517 (6th Cir. 1995)(quoting Fort Halifax Packing Co., Inc.. v. Coyne, 482 U.S. 1, 11 (1987). See also Cassidy, 308 F.3d at 616. In determining whether a severance plan is an ERISA plan, the Sixth Circuit has held that

> [t]he pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.

Sherrod v. General Motors Corp., 33 F.3d 636, 638 (6th Cir.1994) (internal quotations and citations omitted.) A severance benefit plan which provides for a "one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation" and is not a benefit plan within the scope of ERISA. Fort Halifax, 482 U.S. 1, 12 (1987) (one-time severance payment to employees in event plant closed was not protected benefit plan under ERISA). As recognized by the United States Supreme Court in Fort Halifax Packing Co., Inc.. v. Coyne, "[t]o do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." Id.; see also Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 853 (1st Cir. 1993). The need for an administrative scheme may also arise when the employer

"'assumes responsibility to pay benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and control.'" Cassidy, 308 F.3d at 616 (quoting Fort Halifax, 482 U.S. at 12).

Following the holding of Fort Halifax, other courts have developed a multi-factor test to determine the existence of an "ongoing administrative scheme":

> (1) whether the payments are one-time, lump sum payments or continuous, periodic payments, (2) whether the employer is obligated over a prolonged or a limited time period, (3) whether the severance payments are triggered by a single event, such as a plant closing, or rather are continuous payments to be made generally to terminated employees, and (4) whether the severance "plan" requires the employer to engage in a case-by-case review of employees to determine their particular eligibility based on the applicable criteria.

Gilmore v. Silgan Plastics Corp., 917 F. Supp. 685, 688 (E.D. Mo. 1996). See also Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934-935 (8th Cir. 1999); Emery v. Bay Capital Corp., 354 F. Supp.2d 589, 593 (D. Md. 2005); Donovan v. Branch Banking and Trust Co., 220 F. Supp.2d 560, 565 (S.D. W.Va. 2002); D'Oliviera v. Rare Hospitality Int'l, Inc., 150 F. Supp.2d 346, 351 (D.R.I. 2001). Therefore, any inquiry into whether a severance plan may be classified as an ERISA plan requires a fact-specific application of these factors, "'typically none of which on its own is determinative.'" Donovan, 220 F. Supp.2d at 565 (quoting D'Oliviera ,150 F. Supp.2d at 351).

After a review of the Snap-on severance agreement contained in the Agreement and Plan of Reorganization and the relevant factors discussed above, the Court concludes that the Snap-on severance agreement does not constitute an "employee welfare benefit plan" under ERISA.

First, the severance agreement provided Plaintiff with a one-time, lump-sum payment upon the occurrence of a triggering event. Under this severance agreement, a simple, mathematical calculation controls the amount of the severance payment. Pursuant to Section 3.1, the employer is simply required to multiply the employee's monthly wages by six to determine the amount of severance benefits. (Agreement and Plan of Reorganization, Section 3.1) (The employee "shall receive a payment in the amount equal to six months compensation, based on such individual's average monthly compensation for the then previous six months."). This formula employed by Snap-on is the type of mechanical determination contemplated by the Supreme Court in Fort Halifax, 482 U.S. at 4 n.1, and requires no ongoing administrative scheme to administer.   See also Donovan, 220 F. Supp.2d at 565.

Second, payment of these severance benefits did not create an ongoing demand on Snap-on's assets. Snap-on did not undertake any long-term obligation with respect to the employees such as a continuation of medical or life insurance coverage or career outplacement services. See, e.g., Shahid v. Ford Motor Co., 76 F.3d 1404, 1410 (6th Cir. 1996). Instead, under the terms of the agreement, Snap-on assumed no responsibility to pay benefits on a regular basis and, as a result, incurred only a short-term obligation to pay a one-time, lump sum payment to these employees. Third, like the payments in Fort Halifax, the severance payments in the present case came due upon the occurrence of a specific triggering event – relocation of the operations of the facility – rather than at any time Snap-on terminated its employees.

Fourth, the severance plan did not require a case-by-case review of each employee's eligibility. As discussed above, although each employee's individual severance amount may vary based upon their monthly salary, this simple, mathematical calculation did not require an "ongoing administrative scheme" to administer. Fort Halifax, 482 U.S. at 4.

Defendants argue that the Snap-on severance agreement should be characterized as an ERISA plan because it gave Snap-on the discretion to interpret whether there had been a "relocation of operations," and, if so, whether the relocation of work would be considered within a "reasonable daily commute" of Snap-on's Central City facility. The Court disagrees. Once Snap-on decided to relocate the company's operations to a facility that was an "unreasonable daily commute," the eligible employees, the amount of severance benefits, and the company's short-term obligation to pay the severance benefit was predetermined. Therefore, once the triggering event occurred, the company retained no discretion under the severance plan. The exercise of this limited discretionary act does not create a need for an ongoing administration of the benefits; therefore, it does not bring the severance plan under ERISA. See Young v. Washington Gas Light Co., 206 F.3d 1200, 1204 (D.C. Cir. 2000); Velarde v. Pace Membership Warehouse, Inc., 105 F.3d 1313 (9th Cir. 1997) ("minimal quantum of discretion" involved in for-cause determination was not sufficient to turn a severance agreement into an ERISA plan); James v. Fleet/Norstar Financial Group, Inc., 992 F.2d 463 (2d Cir. 1993)(requiring individual determinations regarding eligibility, termination dates and payment amount did not create an ERISA plan); Donovan, 220 F. Supp.2d at 566 (employer's decision as to whether a triggering event has occurred does not require an

ongoing administrative scheme).

Furthermore, the purposes of ERISA make clear that the Snap-on severance plan in no way raises the types of concerns that prompted ERISA's enactment. In Fort Halifax, the Supreme Court emphasized that Congress had enacted ERISA in order to "(1) protect employees from a 'patchwork scheme' of employee benefit regulations, and (2) safeguard the financial integrity of employee benefit funds over the long term." Rodowicz v. Massachusetts Mutual Life Insurance Co., 192 F.3d 162, 170 (1st Cir. 1999)(citing Fort Halifax, 482 U.S. at 12). The Supreme Court recognized that ongoing investments and obligations may give rise to a "'patchwork scheme' of benefit regulations that are vulnerable to employer abuse, and thus implicate the purposes of ERISA." Id. (citing Fort Halifax, 482 U.S. at 16). However, as in this case, neither of the above concerns are implicated by a one-time payment triggered by a single event. Id. As noted by the Seventh Circuit in Belanger v. Wyman-Gordon Co., "[s]ince a single-shot benefit requires no greater assurance than that the check will not bounce, ERISA's panoply of protections has virtually nothing to do with such a simple task." 71 F.3d 451, 454 (1st Cir. 1995). In the present case, like in Fort Halifax, ERISA's protections are not invoked because there is no ongoing operation of the Snap-on severance agreement to oversee. Id.

## CONCLUSION

The Court finds that the Snap-on severance agreement contained in the Agreement and Plan of Reorganization is not an "employee welfare benefit plan" under ERISA, and as a result, this Court lacks subject matter jurisdiction over the Plaintiff's claims. The Court

9

concludes that the action was improperly removed to federal court on the basis of federal question/ERISA preemption. For these reasons, **IT IS HEREBY ORDERED** that the Plaintiff's motion to remand the case to the Muhlenburg Circuit Court [DN 14] is **granted**, and this action is **REMANDED** to the Muhlenberg Circuit Court. The Clerk shall strike this case from the active docket of this Court.

cc: counsel of record